## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, )<br><br>Petitioner, )<br><br>vs. )<br><br>AMALGAMATED TRANSIT UNION, LOCAL 689, AFL-CIO, )<br><br>Respondent. ) | **Civil Action No. _____** |

## PETITION TO VACATE ARBITRATION AWARD

Petitioner Washington Metropolitan Area Transit Authority ("WMATA" or "the Authority"), by and through counsel, hereby petitions this Court for the entry of an Order vacating the Arbitration Opinion and Award issued by M. David Vaughn on September 9, 2016 ("Award").[1] As grounds for this petition, WMATA states as follows:

### Nature of the Case

1.      This is an action brought by WMATA to vacate a labor arbitration award improperly issued on September 9, 2016. The arbitration concerned WMATA's implementation of a uniform disciplinary policy in the form of a matrix containing common, Authority-wide standards for employee discipline and discharge, known as the WMATA Disciplinary Guidelines Matrix (the "Matrix").[2]

---

[1] The Award is attached as Exhibit 1.
[2] The Matrix is attached as Exhibit 2.

2.      Recognizing but manifestly disregarding fundamental principles of contract law, the Arbitrator improperly determined that, although the parties' CBA was unambiguous regarding the parties' rights, he could nevertheless deem two provisions of the CBA contrary and irreconcilable and proceed to look beyond the CBA in rendering his decision. The Arbitrator then determined that the Matrix was a "major policy" and that, because WMATA and the Union had negotiated "major policies" in the past, WMATA had violated the CBA by not bargaining with the Union over implementation of the Matrix.

3.      The Award sustains in part the Union's grievance, orders the Authority to commence negotiations with the Union over the Matrix by November 1, 2016, and orders that WMATA hold implementation of the Matrix in abeyance until final resolution of disputes related to its implementation.

4.      The Arbitrator's decision and award manifestly disregards fundamental principles of contract law, fails to draw its essence from the CBA, is arbitrary and capricious and should be vacated.

**The Parties**

5.      Petitioner, WMATA, is an interstate compact agency and instrumentality of the State of Maryland, the Commonwealth of Virginia, and the District of Columbia that is governed by the Washington Metropolitan Area Transit Authority Compact ("WMATA Compact"), codified at D.C. Code § 9-1107.01. The purpose of the Authority is to coordinate the operation of transit services within the Washington, D.C. metropolitan area.

6.      Respondent, Amalgamated Transit Union, Local 689, AFL-CIO ("Local 689" or "Union"), is a collective bargaining unit affiliated with the Amalgamated Transit Union, AFL-CIO, whose members are employed by the Authority.

**Jurisdiction and Venue**

7.       The Court has original jurisdiction over this action under § 81 of the WMATA

Compact, codified at D.C. Code § 9-1107.01.[3]

8.       Pursuant to 28 U.S.C. § 1391(b), venue is appropriate in this District; Respondent

engages in labor activities within this District, and the actions described below were carried out,

in substantial part, in this District. Further, many employees of WMATA represented by

Respondent Local 689 work in this District.

**Factual Allegations**

9.   The Authority and the Union are parties to a collective bargaining agreement ("CBA")

which covers the period from July 1, 2012 through June 30, 2016.[4]

10. Section 102 of the CBA describes the Union's right to bargain.  Titled "Recognition of

the Union," Section 102 states that "except as expressly waived by other specific provisions of

this agreement, the Union reserves the right to bargain … concerning all issues relating to wages,

hours and working conditions." CBA § 102(b).

11. Section 102 of the CBA also describes specific matters that are reserved for the

Authority's prerogative and not subject to bargaining with the Union.  Specifically, Section 102

states that "all matters pertaining to the management of operations, including … standards for the

promotion of employees and their discipline and discharge for proper cause, and the

development and enforcement of reasonable rules and regulations regarding employment are the

---

[3] For legislation by Congress, *see* P.L. 89-774, 80 Sta. 1324 (1966); P.L. 92-349, 86 Stat. 464
(1972); P.L. 92-517, 86 Stat. 999 (1972); P.L. 94-306, 90 Stat. 672 (1976); P.L. 100-285, 102
Stat. 82 (1988); P.L. 104-332, 110 Stat. 3884 (1996); P.L. 105-151, 111 Stat. 2686 (1997).

[4] While the Parties are currently negotiating a new contract, this contract remains in effect. The
CBA is attached as Exhibit 3.

prerogatives of the Authority and are reserved by the Authority unless expressly waived by specific provisions of this agreement, or by the past practices of the parties." CBA § 102(b).

12. Sections 104(d) and (e) of the CBA state in part that: "An employee will not be discharged, suspended, or otherwise disciplined, nor will entries be made against the employee's service record without sufficient cause. … It shall be the policy of the Authority not to suspend employees for misses or other minor violations of the rules if the necessary result can be obtained by other means of discipline. Suggestions from the Union will be welcomed regarding the best way to ensure good service without hardship on the employees."

13. Section 105 permits the parties to submit "questions or grievances" which cannot be amicably resolved between the parties to a Board of Arbitration, and sets out the procedures for selecting a neutral arbitrator.

14. Beginning in approximately 2009, WMATA began developing its Disciplinary Guidelines Matrix.

15. The Matrix is a rule or regulation regarding employment which was intended to create stable, common, and reasonable Authority-wide standards for the discipline and discharge of employees for proper cause, as described in § 102(b) of the CBA.

16. In response to the Union's request to commence negotiations regarding the Matrix, WMATA informed the Union that the Matrix was not a mandatory subject of bargaining under the CBA because it clearly falls within the reservation of matters that are the sole prerogative of the Authority. *See, e.g.*, Award at 10–11.

17. The Matrix did not impact any collectively bargained policies.

18. On February 1, 2015, WMATA adopted and implemented its Disciplinary Guidelines Matrix.

19. The arbitration was the result of two individual grievances by WMATA employees who were disciplined in accordance with the Matrix, and three class action or "group" grievances filed by WMATA employees and/or Union leadership.

## The Arbitration Award

20.     The grievances were referred to arbitration and consolidated by the Arbitrator.  A hearing before the Board of Arbitration was held on February 15, 2016, March 14, 2016, and March 31, 2016.

21.     The arbitration decision and Award was executed on September 9, 2016.

22.     The Arbitrator stated in the Award that he found that the parties' CBA contained "clear and unambiguous language that conveys distinct terms." Award at 43.

23.     The Arbitrator stated in the Award that he was "not allowed to ignore clear-cut contractual language and may not legislate new language, since to do so would usurp the role of the labor organization and employer." Award at 43.

24.     The Arbitrator stated in the Award that "Management… should have the right, assuming the Matrix is 'reasonable,' to develop and enforce it." Award at 45.[5]

25.     The Arbitrator stated in the Award that management's right to unilaterally implement the Matrix and the Union's right to bargain were "in practice contradictory and irreconcilable." Award at 45.

26.     The Arbitrator stated in the Award that he had made a finding that the Matrix is a "major policy." Award at 47–48.

---

[5] The Arbitrator did not make a finding regarding the reasonableness of the Matrix. Award at 49.

27.     The Arbitrator stated in the Award that he had made a finding that the parties had a past practice of negotiating "major policies" which had a "broad impact" on the bargaining unit. Award at 47.

28.     The Award requires the parties to negotiate regarding specified aspects of the Matrix. Award at 50.

29.     The Award also noted several aspects of the Matrix which the Arbitrator determined "may well be within Management's rights." Award at 49–50.

### Grounds for Vacating Arbitration Award

### COUNT ONE
### (Award Manifestly Disregarded the Law)

30.     Petitioner repeats and re-alleges Paragraphs 1 – 29 as if set forth fully herein.

31.     Fundamental tenants of contract law dictate that specific language in a contract is given greater weight than general language.

32.     The Arbitrator acknowledged this bedrock principle of contract law in stating that "a contract's specific terms carry greater weight than its general language." Award at 44.

33.     Section 102 of the CBA clearly states that "*except as expressly waived by other specific provisions of this agreement*, the Union reserves the right to bargain … concerning all issues relating to wages, hours and working conditions." CBA § 102(b) (emphasis added).

34.     Section 102 further contains one such express waiver in stating that "all matters pertaining to the management of operations, including … standards for … discipline [of employees] and discharge for proper cause, and the development and enforcement of reasonable rules and regulations regarding employment *are the prerogatives of the Authority and are reserved by the Authority*…." CBA § 102(b) (emphasis added).

6

35.     The specific language of Section 102 that reserves as the Authority's sole prerogative the right to manage operations, including standards for discipline of employees and the development and enforcement of reasonable rules and regulations, is to be given greater weight than the Union's general right to bargain.

36.     Despite the Arbitrator's acknowledgement of this fundamental principle of contract law, he consciously disregarded it in determining that WMATA's right to unilaterally implement the Matrix and the Union's right to bargain were "in practice contradictory and irreconcilable."

37.     The authority granted to the Arbitrator under the CBA does not permit him to interpret the agreement by referencing the parties' past practices when the language of the CBA is clear and unambiguous on its face.

38.     Despite what he conceded was clear and unambiguous language regarding the Authority's right to establish standards for discipline of employees and the development and enforcement of reasonable rules and regulations, the Arbitrator nonetheless looked outside the four corners of the CBA at the parties' past practices.

39.     The Arbitrator improperly modified the parties' CBA by finding that WMATA had an implied obligation to negotiate "major policies" regarding standards for discipline of employees and the development and enforcement of reasonable rules and regulations irrespective of WMATA'S expressly reserved right to establish such standards, rules, and regulations.

40.     Rather than limiting his Award to the authority granted to him by the clear and unambiguous provisions of the CBA, the Arbitrator fashioned an Award which requires WMATA to negotiate on an issue that is expressly reserved to it under the CBA as a management right.

41.     The Award should therefore be vacated because the Arbitrator manifestly disregarded the law.

## COUNT TWO
## (Award Does Not Draw its Essence from the CBA)

42.     Petitioner repeats and re-alleges Paragraphs 1 – 41 as if set forth fully herein.

43.     The Award should be vacated because it does not draw its essence from the provisions of the CBA.

44.     Section 102 contains an express waiver of the Union's right to bargain in stating that "all matters pertaining to the management of operations, including … standards for … discipline [of employees] and discharge for proper cause, and the development and enforcement of reasonable rules and regulations regarding employment ***are the prerogatives of the Authority and are reserved by the Authority***…." CBA § 102(b) (emphasis added).

45.     The Award disregards Section 102 of the CBA, which contains an express provision giving WMATA the sole prerogative to develop and enforce standards regarding employee discipline as a management right.

46.     Further, the Award disregards Section 102 of the CBA, which contains an express provision giving WMATA the sole prerogative to set reasonable rules and regulations.

47.     The Award instead requires the parties to negotiate regarding "major policies."

48.     "Major policies" is not a term or phrase referenced in the CBA.

49.     The Arbitrator thus substituted his own judgment in determining what topics are negotiable between the parties.

50.     The Award should therefore be vacated because it fails to draw its essence from the provisions of the CBA.

## COUNT THREE
### (Award is Arbitrary and Capricious)

51. Petitioner repeats and re-alleges Paragraphs 1 – 50 as if set forth fully herein.

52. In substituting his own judgment for the language of the CBA regarding whether the Matrix was negotiable, the Arbitrator crafted an award which lacks any rational basis.

53. Section 102 of the CBA clearly notes that "***except as expressly waived by other specific provisions of this agreement***, the Union reserves the right to bargain … concerning all issues relating to wages, hours and working conditions." CBA § 102(b) (emphasis added).

54. Section 102 further contains one such express waiver in stating that "all matters pertaining to the management of operations, including … standards for … discipline [of employees] and discharge for proper cause, and the development and enforcement of reasonable rules and regulations regarding employment ***are the prerogatives of the Authority and are reserved by the Authority***…." CBA § 102(b) (emphasis added).

55. The Award irrationally disregards these clear and unambiguous provisions of the CBA.

56. The Award further draws arbitrary distinctions between negotiable and non-negotiable elements of the Matrix in a manner which bears no rational connection to the CBA or record evidence.

57. WMATA is not required to bargain with the Union regarding individual employee discipline determinations.

58. Section 104(d) of the CBA states in part that: "An employee will not be discharged, suspended, or otherwise disciplined, nor will entries be made against the employee's service record without sufficient cause…."

59.     The Union is thus permitted to file an individual grievance if it believes the discipline WMATA awarded to an individual for a rule violation is "without sufficient cause."

60.     The Award brings about an absurd and irrational result, in that it requires WMATA to bargain regarding its disciplinary decision-making when WMATA could simply implement those same decisions on a case-by-case basis without negotiation.

61.     The Award should be therefore be vacated because it is arbitrary and capricious, is irrational, is not supported by the evidence or by reason, is an abuse of discretion, and/or is not otherwise in accordance with the law.

### Relief Requested

**WHEREFORE**, WMATA respectfully requests that this Court enter an order:

1.  Staying enforcement of the Award until the resolution of this Petition;

2.  Vacating the Arbitration Award issued by Arbitrator M. David Vaughn which requires WMATA to negotiate its Disciplinary Guidelines Matrix with Local 689; and

3.  Granting WMATA such other relief as may be just and proper in this case.

Dated: October 13, 2016                    Respectfully Submitted,


                                _/s/_____
                                Robert G. Ames (#234393)
                                Kishka McClain (#478915)
                                Robin S. Burroughs (#1023383)
                                Venable LLP
                                575 7th Street, N.W.
                                Washington, D.C. 20004
                                Tel: (202) 344-4000
                                Fax: (202) 344-8300
                                RGAmes@Venable.com
                                KFMcclain@Venable.com
                                RSBurroughs@Venable.com

Gerard J. Stief (#925933)
Chief Counsel—Appeals & Special Lit.
WMATA
600 Fifth Street, N.W.
Washington, D.C. 20001
Tel: 202-962-1463
Fax: 202-962-2550

*Attorneys for Petitioner WMATA*